By the Court.

Brown, the appellee in this case, brought suit in the district court of the first district, from whence this appeal is taken, to recover six thousand dollars which are stated, in his petition, to have been secured to him, by a transfer of a mortgage, which the late Geo. T. Phillips, the insolvent, had retained on certain propertv, by him sold to J. Polfrey. The mortgage purports to secure the payment of thirty thousand dollars, by instalments, as fixed by the contract of sale, between Phillips and Polfrey.
From the testimony, given in the court below, *271 all of which is reduced to writing and transmitted to this court, the following facts may be collected : that, previous to March eighteen hundred and eight, Phillips was indebted to Brown, in four thou - sand dollars, which was a mere personal credit; that Brown came from New-York, to the city of New-Orleans, for the purpose of securing this debt ; Phillips, being unable to pay, expressed to one of the witnesses, who was his lawyer, a desire to secure the debt of four thousand dollars, and also two thousand which the creditor proposed lending him to support his credit, until the arrival of Woolsey, who was said, at that time, to be on the river, and was soon expected in New-Orleans, and from whom Phillips expected relief; but, on his arrival, he refused to advance any thing; his credit was at that time gone, and it appears from the testimony that it could not be retrieved, for a less sum than seventy or-eighty thousand dollars, which he hoped to obtain from Woolsey, Mann and Bernard, and that without this aid he, Phillips, must fail. '
East. District.
Feb. 1814.
T he appellee, with a knowledge that Phillips must fail, unless he obtained the relief above stated, lent him two thousand dollars, and on the eleventh of March eighteen hundred and eight, took the transfer of the mortgage, as heretofore mentioned, as a security for the payment of this sum, and also the four thousand dollars which Phillips owed him, on account of previous tran- *272 sa°tions. Twenty days afterwards, viz. .011 the thirty first of the same month, Phillips failed, and ceded his property for the benefit of his creditors, \vhose syndics, in their management of the insolvent’s estate, seem to have considered Brown’s debt asoné privileged by the transfer of the mort-g-age for that purpbse; as in a sale made by them to Kenner and Henderson, of the same property, on part of which this mortgage existed, they stipulated that, the whole sum of six thousand dollars should be paid by the purchasers to Brown ; and in consequence of which, they have been sued with the syndics of Phillips, and judgment obtained against all, in the district court, for the whole amount claimed,
Th e counsel for the appellants insist: 1. That this judgment ought to be reversed and annulled in toto, on the ground that the said transfer of mortgage, so far as it was intended to confer a privilege on the debt of the appellee, is a fraud on-the other creditors of the said Geo. T. Phillips, and is therefore void, or such an instrument as by law must be considered null and of no effect ; and that no benefit can accrue to the party claiming under it, but he must still remain a mere personal creditor. 2. They insist, that if the security is not fraudulent and void ira tota, as it relates to other creditors, it must at least be considered so, as far as it relates to the four thousand dollars *273 which Phillips owed to Brown, previous to the transfer.
Th é circumstances' of this case require from the court a decision on a question, which will be general in its effects, and highly important to the commercial part of the community: that is how a trader, merchant, or any other person owing debts, who becames insolvent and is about to fail, can give a preference to some of his creditors, either by payment or security by mortgage or any other instrument by which the creditor merely personal, becomes privileged, in exclusion of others whose credits were of equal dignity ?
As to the right which the debtor has to make payment to any creditor, who may demand it, or such as he chooses to pay, if this be done, átany time previous to his failure and actual cession of his property, and in the usual course of business, such payment, according to the laws of this country, cannot be revoked or annulled, unless by privileged creditors. In support of this principle see Febrero del Juicio de Concurso, no. 36, 5 Partidas, s. 15, law 9, and 1 Domat,
The question whether all instruments, acts, and transactions made by a debtor about to fail, or in insolvent circumstances, which are not in ' the ordinary course of business, and are intended to give a preference to one, or more creditors, in *274 vi°Iati°n of those prineiples °f law, which require that an equal distribution of the estate of an insolvent debtor should be made, amongst all his creditors, equally privileged in their claims, contains the whole difficulty found in the decision of this suit, and to which the court have principally directed their enquiries, in the investigation of this important subject.
Admitting that payments, made in the usual course of business, at any period prior to the actual surrender of his property, by the person failing, are to be considered as good and valid in law, altho’ sufficient property should not remain to satisfy all his debts, the reason, why a different rule should prevail with respect to acts done, with a view to secure a payment to any particular creditor, does not, at first view, appear very evidént; as the debtor seems to hold a dominion over his goods, as well as his money, until he cedes them for the; benefit of his creditors. Yet this distinction, it is believed, is found in the laws which must govern the judgment to be given in this case. When money is paid to a fair creditor, in the usual course of trade, nothing attends the transaction, which can have any tendency to excite suspicions of fraud or injustice, on the part’ of either party ; but in cases where, instead of payment, some security is offered, this very circumstance creates a violent presumption that the *275 debtor is not able to pay his debts, and that he about to fail. When in this situation, all acts done by him, which are intended to effect an alteration in the privileges of some of his creditors, are to be considered as fraudulent and void as they relate to others, having claims of the same dignity. Decisions on the bankrupt laws of England have been cited, and also from the state of New-York on the bankrupt system of the United-States, which appears to be similar to that of England. From what we have been able to collect from these decisions, it seems that, according to a proper construction and application of those laws to cases arising under them, two things are necessary to annul an act done by the bankrupt, which gives a preference to some of his creditors to the injury of the rest. 1. That it must be voluntary pn the part of the debtor ; and 2. that it should have been done with a view to bankruptcy. The circumstance of insolvency alone is not held sufficient to invalidate the transactions of a debtor with any of his creditors. It is not for us to dispute the wisdom and correctness of those decisions, as given on the particular laws of the countries where they have been rendered ; but these laws-certainly differ from ours, in testing the conduct of the bankrupt, on the ground of its being voluntary, and with a view to some act of bankruptcy. The laws, which must govern the case before the court, fix the incapacity of the debtor to make any alteration in *276 the situation °f his creditors, by acts of security &*d preference, as much to the period of his being unable to pay his debts, as to the tinte of oom-tnitting such acts as would by the bankrupt lavys of England amount to acts of bankruptcy. - Considering then the rules by which the courts of this state must be governed in contests of this nature, as Judges we have only to apply them in such manner as to promote the ends of justice to the greatest possible degree. The period of insolvency, or want of means in the debtor to pay all his debts, if evinced by a subsequent failure, and a cession of his property soon after follows, is certainly the most rational one, after which he should not be allowed to make any change in the state of his affairs, to the benefit of part 'of his creditors and injury of the others; because that is the-time from which they ought to be entitled to share his estate according to the- privilege of their claims then existing ; and the only thing which can oppose a just exercise and application of this rule, is the difficulty which may occur in fixing with precision that period : and on this account every case must rest principally on the proofs and circumstances attending it, which must be submitted to the legal discretion of the J udges. In the present Case we have no doubt, from the testimony exhibited, that Phillips was insolvent, and about to fail, at the time when the transfer of the mortgage was made to Brown ; and this, within his *277 knowledge, and being intended"in the event of such failure to give the appellee, Brown, an undue preference over other creditors, by creating a privilege on his debt, which befóle was only personal, as it relates to the four thousand dollars, part of the consideration for which said transfer was made; and as to that amount must be declared null and void. In support of what is here laid down see Curia Philipica, chap. 12, Prelacion, no. 4 Ord. of Bilb. ch. 17. no. 53, and 3 Azev. 452 c. 5, t. 20.
The court has had some doubts whether this transaction ought not to be considered as totally Void, both as to the two thousand dollars advanced at the time of making the transfer, and also the four thousand which were previously due and owing from Phillips to the appellee, taking it as one entire act which cannot be easily separated and distinguished : but, on mature consideration, we'are of opinion that the circumstance of incorporating the two claims will not vitiate so much of the contract as was fair and legal, at the time of entering into it, which'may be considered that relating to the money advanced, at the period of taking the security for surely this cannot be deemed prejudicial, or fraudulent as it affects the interest of the creditors, being so much fairly advanced to the debtor, and consequently beneficial to all.
The Partidas have been cited to shew that *278 linútation of one year bars the rights of judgment creditors to annul sales made by the debtor in fraud of their claims. Perhaps, actions which are to be commenced by creditors to annul fraudulent * ^ . . acts of their debtors, may be prescribed against by that lapse of time ; but this cannot affect the privilege or right which the mass of creditors have to oppose, in a court of justice, the fraudulent pretensions of other creditors who may be prosecuting claims to the injury of all. The law cited is, therefore, not applicable to this suit. The circumstance of the syndics having, in the sale made to Kenner and Henderson, stipulated that the whole of Brown’s claim should be paid by the purchasers, can give no additional force or validity to the transaction, by which his claim, that was only personal, was attempted to be made privileged; because syndics have nó right to make any compromises, or do any act tending to alter the privileges of creditors ; the contract must, therefore, rest on the legality and validity which originally belonged to it.
Fr o m a careful examination, and the best consideration which the court has been able to give the cause, it is of opinion that the judgment of the district court must be reversed; and it is, therefore, ordered, adjudged, and decreed that said judgment be reversed and annulled: and it is further adjudged and decreed that the appellee do recover from *279 the appellants two thousand dollars, the sum ad- - vanced by him to the late Geo. T. Phillips at the time of the transfer of said mortgage (without injury to his claim on the estate of him the said Phillips, as a personal creditor, for the four thousand dollars, making a part of the whole consideration of six thousand dollars, intended to he secured by the said transfer of mortgage) and also interest at the rate of six per cent, per annum, from the eleventh of March eighteen hundred and eight, until paid. And it is further ordered that the appellee pay the costs, of the appeal.