## OVERTON vs. GERVAIS.

If the jury give their verdict for a sum *with interest,* the court may ascertain the period of its beginning, in the judgment

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. This action was instituted on an obligation of the defendant to deliver to the plaintiff 118,333 pounds of clean ginned and baled cotton, in three annual instalments. Previous to any of these instalments becoming due, an attachment to obtain security for the ultimate payment of the debt, was taken out against the property of the defendant, which was levied on certain credits belonging to him, in the hands of Wilkins and Linton.

It may be questionable whether, by our law, an attachment was the proper remedy to enforce the obligation for the delivery of a spe-

EasternDis't
.*Apr 1*,1827.

OVERTON
vs.
GERVAIS.

cific thing. But we are saved the necessity of going into this enquiry. For some time subsequent to the commencement of the action, the plaintiff filed a supplemental petition, stating that, the first instalment had become due, and that the defendant had failed to discharge it. To this petition, an attorney, not appointed by the court, but employed by the defendant himself, filed an answer on the merits, and to it joined a claim in reconvention. 1 *Martin*, 276.

On the issues so joined, the parties took out commissions, and a good deal of testimony was obtained. Before the case came to trial on this testimony, a consent rule, as it is styled, was placed on record, by which it was agreed, that judgment should be entered up in favor of the plaintiff for the price of the cotton due by the first instalment, with ten per centum interest from the time when it became due; viz:—the 1st January, 1825; the value of the cotton to be fixed by two persons therein named.

In consequence of this confession of judgment, and the payment of the money due on the first instalment, on or before the 1st January, 1826, the defendant was to

have an extension of time for the payment of the two last instalments; and was to have permission to bring suit in the state of Mississippi, where he resides, against the makers of the notes which had been attached in the hands of Wilkins and Linton.

The money was not paid in pursuance to this agreement, on the first January, 1826; and, on the plaintiff attempting to have judgment entered upon it, in the month of April, following, the counsel for defendant filed an affidavit, in which he stated, that since the consent rule, the plaintiff, Overton, had proposed to him, that if the defendant would deliver to Overton, all the slaves which he had purchased of him, with the exception of one, deceased, and pay, on or before the first of March, of that year, the sum of 4,000 dollars, that the present suit should be discontinued, and a full and complete discharge given to the defendant.

That, in pursuance of this agreement, the slaves had been returned and the sum of 2,000 dollars paid on or before the 16th February, then last past.

To establish this last agreement, interrogatories were propounded to the plaintiff: who

answered: That he had had a private and confidential conversation with the attorney for the defendant; that in the course of this conversation, he had mentioned to Mr. Duncan, that he would enter into no agreement of any description, with Mr. Gervais, that would have a tendency to arrest the suit now pending; but if the negroes were returned in all the month of January, so that he might be prepared to make a crop, the title revested in him, and the sum of $4000 paid on or before the first of March, that he would settle with the defendant; that this proposition though accepted by the attorney, had not been complied with; only $2000, had been paid, and the negroes not delivered until February, and no conveyance tendered of them. That the plaintiff's agent received them on the condition, that they were to remain the property of the defendant, until the sum of $4000 was paid, on or before the first of March, and that they are now in the legal possession of the sheriff. That it was agreed by the plaintiff, and the attorney for defendant, in case the sum of $4000 was not paid at the period already mentioned, that the $2000 should be credited on the original debt, or deducted from such judgment as might be rendered in court

The referees, to whom under the consent rule, was submitted the price of the cotton, due on the first instalment, reported that it was worth fifteen cents on the first day of January, 1825, which made the total sum due on that day, $7099 95.

On these facts, and others not material to be stated, the jury found a verdict for the sum liquidated by the referees, deducting the $2000 paid by the attorney of defendant, with interest.

The court confirmed this verdict and gave judgment, for $5099 95, with interest, at five per cent. from judicial demand until paid, and costs of suit.

Both parties have complained of this judgment. The defendant, because the last agreement entered into with the plaintiff, was not enforced. The plaintiff, because the interest on the sum due was not fixed at ten per cent.

The defendant's objections are without any foundation. The only evidence we have of this agreement, is from the answers given by the plaintiff; and it appears from them, that it was only on a strict compliance with the proposition made by him, that the legal proceedings against the defendant, were to be stop-

EasternDis'ct
*April*, 1827.

OVERTON
*vs*
GERVAIS.

ped. That performance on the part of the latter, was a condition precedent to any change in the rights which the former had, under his contract. This performance having failed, a promise made as a consequence of its taking place, must also fail to produce any effect.

The appeals made to a supposed equitable power, that this court possesses, of divesting parties of their legal rights, when the exercise of them presses heavily on their adversary, cannot affect the decision of the case. We disclaim any such authority. And if we possessed it, we should look in vain for any thing shewn in evidence, which would justify the application to the instance before us. The defendant bought the negroes in the month of November 1824, under an engagement to make himself accountable to a mercantile house, in N. Orleans, for a debt which the plaintiff owed to them. He took the slaves to another state, and refused to carry his agreement into effect, on the ground, that the property he had received was not such as he had bargained for. When requested to return it, and rescind the contract, he would not comply with the proposition, because it would deprive him of making

a crop that season. When pressed to return the slaves, after the crop was made, and pay a reasonable hire, he refused to do so. When sued, to compel a performance of his engagements, he pleaded that the slaves were afflicted with redhibitory diseases, and that the plaintiff had practised gross fraud and deceit on him. After suspending the decision of the cause nearly two years, in a vain attempt to obtain evidence to support this defence, he voluntarily abandons it before this court. When the hour of trial approached, he made an agreement that he would pay the first instalment on a particular day, on condition that each of the other instalments should be postponed one year, and he failed to perform even this. A last offer was made to him, to return the slaves by a particular time, and pay a certain sum for the use he had of them; and this too, he only performed in part.

It is in evidence that the plaintiff, whose own affairs were embarrassed, at the time he made this contract, suffered much by these repeated disappointments; and how, after such a series of breaches of promise, the defendant can come into court, and through his counsel, complain that the plaintiff will not be bound by

Eastern Dis't
*April*, 1827.

OVERTON
vs.
GERVAIS.

a partial performance of the last proposition made by him, make strong and impressive appeals to our equity, and charge the plaintiff with fraud and oppression, would be to us a matter of astonishment, if our former experience had not taught us how completely the delusion of self interest blinds men to a sense of what is due to others.

The only difficulty which has occurred to us in the decision of the case, is whether it is necessary for us to make any order in respect to the negroes which were delivered to the plaintiff. It is certainly true, as the defendant has contended, that the plaintiff should not have the property, and the price that was to be paid for it. But the evidence shews that this property is now out of the possession of the latter, and in that of the sheriff. It has been stated at the bar, by the counsel for the defendant, and the correctness of the statement was acquiesced in, that the possession alluded to by the plaintiff in his answer to the interrogatories, is that which has been produced by an attachment he has levied on them, for the last instalments of the purchase money.

If such be the fact, this court cannot interfere in the judgment with any rights which

the plaintiff may have acquired by that suit. The correctness and legality of the course he has pursued, will be properly examinable in it.

As to the application of the plaintiff, to have the judgment amended in relation to the interest, we think it ought to be allowed. It has been decided, a few weeks since, in the cases of *Breedlove, Bedford & Robeson*, vs *Jacobs*, and *Gouverneur* vs. *Russel*, that when the jury found a verdict, *without interest*, the court could not give it by the judgment. But in this instance, the verdict is for a certain sum, *with interest*. The question is, at what rate that interest must be calculated? and the answer to it must be, whatever interest the law, or the agreement of the parties, had established; for the jury must be presumed to have found, in relation to the obligations which the one or the other created. In this case the original contract, and the consent of parties, placed on record, had fixed it at ten per cent. from the time the first instalment became due. That interest must, therefore, be given in the judgment.

It is, therefore, ordered, adjudged and decreed, that the judgment of the district court

be annulled, avoided and reversed; and it is further ordered, adjudged and decreed, that the plaintiff do recover of the defendant, the sum of five thousand and ninety-nine dollars ninety-five cents, with interest from the first day of January, 1825, at ten per cent. until paid, it being the balance due on the first instalment, with costs in both courts.

*Ripley & Conrad*, for the plaintiff, *Duncan* for the defendant.